## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HERMAN MILLER INC.; DESIGN WITHIN REACH INC.; GEIGER INTERNATIONAL, INC.; NEMSCHOFF INC.; MAHARAM FABRIC CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA; OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; ROBERT E. LIGHTHIZER; U.S. CUSTOMS & BORDER PROTECTION, MARC. A. MORGAN, U.S. CUSTOMS & BORDER PROTECTION ACTING COMMISSIONER<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Court No.  1:20-cv-00243<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>COMPLAINT</u>

Plaintiffs, Herman Miller Inc., Design Within Reach Inc., Geiger International, Inc., Nemschoff Inc., and Maharam Fabric Corporation, by and through their attorney, allege and state as follows:

1.     This action concerns the imposition of tariffs in connection with an investigation initiated under Section 301(b) of the Trade Act of 1974 by the Office of the U.S. Trade Representative (USTR) on August 18, 2017, into certain acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation. *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's*

*Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

2.      The products subject to this Complaint are included in USTR's Lists 3 and 4A. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018) and *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019). https://ustr.gov/issue-areas/enforcement/section-301-investigations/tariff-actions.

3.      USTR conducted an investigation into China's unfair intellectual property policies and practices pursuant to Section 301 of the Trade Act (19 U.S.C. § 2411). Section 304 of the Trade Act (19 U.S.C. § 2414) required USTR to determine what action to take, if any, within 12 months after initiation of that investigation. USTR failed to issue List 3 (or subsequent List 4) within that window. USTR may not fall back on its "modification" authority under Section 307 of the Trade Act (19 U.S.C. § 2417) as a basis for Lists 3 and 4A. Section 307 of the Trade Act does not permit USTR to expand the imposition of tariffs to other imports from China for reasons unrelated to the unfair intellectual property policies and practices it originally investigated under Section 301 of the Trade Act. Yet that is exactly what Defendants did here when they promulgated the Lists 3 and 4A duties in response to China's retaliatory duties and other unrelated issues. And even if USTR deems the existing tariffs "no longer appropriate," as it also did here, the Trade Act permits USTR only to delay, taper, or terminate—not ratchet up— the actions it has already taken.

4.      The arbitrary manner in which Defendants implemented the Lists 3 and 4A tariff action also violates the Administrative Procedure Act ("APA"). USTR (1) failed to provide sufficient opportunity for comment; (2) failed to consider relevant factors when making its decision, e.g., undertaking no analysis of the supposed "increased burden" imposed on U.S. commerce from the unfair policies and practices that it originally investigated; and (3) failed to connect the record facts to the choices it made. USTR said absolutely nothing about how those comments shaped its final promulgation of Lists 3 and 4. USTR's preordained decision-making bears no resemblance to the standards that the APA requirements.

5.      The Court should set aside Defendants' actions as ultra vires and otherwise contrary to law, as well as order Defendants to refund (with interest) any duties paid by Plaintiffs pursuant to Lists 3 and 4A.

## JURISDICTION

6.      The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B).

## PARTIES

7.      Plaintiff, Plaintiff Herman Miller Inc. ("HMI"), is a publicly owned Company, headquartered in Zeeland, Michigan, whose principal business consists of the research, design, manufacture, selling and distribution of office furniture, textiles and home furnishings and related technologies and services.  The company's products are marketed worldwide by its own sales staff, independent dealers, via its ecommerce website and retail studios.  The family of

brands includes subsidiary companies, including but not limited to the wholly owned companies of Design Within Reach Inc. (DWR), Geiger International, Inc., Maharam Fabric Corporation and Nemschoff, Inc. (which also appear as Plaintiffs in this action).  HMI serves a broad range of U.S. and Global customers in the work, home and healthcare areas. Herman Miller Inc, and our family of brands together employ approximately 7,600 individuals and has generated approximately $2.5 billion in revenue annually during the last 2 years. HMI and its subsidiaries have made numerous entries of furniture and furniture components primarily classified under HTSUS headings 9401 & 9403, of which various subheadings are subject to the additional ad valorem duties under Lists 3 and 4A.  Altogether HMI and its named wholly owned subsidiary companies have used 171 different HTSUS subheadings subject to the additional ad valorem duties under Lists 3 and 4A.

8.      Defendant United States of America received or will receive the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

9.      The Office of the USTR is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act of 1974 and implementing "appropriate" responses, subject to the direction of the President. USTR conducted the Section 301 investigation at issue and made numerous decisions regarding Lists 3 and 4A.

10.     Ambassador Robert Lighthizer currently holds the position of USTR and serves as the head of the Office of the USTR. In these capacities, he made numerous decisions regarding Lists 3 and 4A.

11.     Defendant U.S. Customs & Border Protection ("CBP") is the agency that collects duties on imports. CBP collected payments made by Plaintiffs for the tariffs imposed by USTR under Lists 3 and 4A.

12.     Defendant Mark A. Morgan is the Acting Commissioner of CBP. In this capacity,

he oversees CBP's collection of duties paid or to be paid by Plaintiffs under List 3 and 4A.

## STANDING

13.     Plaintiffs, Herman Miller Inc., Design Within Reach Inc., Geiger International,

Inc., Nemschoff Inc., and Maharam Fabric Corporation, have standing to sue because they are

"adversely affected or aggrieved by agency action within the meaning of" the APA. 5 U.S.C. §

702; see 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has

jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved

by agency action within the meaning of Section 702 of title 5."). Tariffs imposed by Defendants

pursuant to Lists 3 and 4A adversely affected and aggrieved Herman Miller Inc., Design Within

Reach Inc., Geiger International, Inc., Nemschoff Inc., and Maharam Fabric Corporation,

because they are required to pay these unlawful duties.

## TIMELINESS OF THE ACTION

14.     A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within

two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

15.     The instant action contests action taken by Defendants that resulted in List 3.

*Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to*

*Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21,

2018). Plaintiffs' claims accrued at the earliest on September 21, 2018, when USTR published

notice of List 3 in the Federal Register. *Id*. Plaintiffs have therefore timely filed this action.

16.     The instant action contests action taken by Defendants that resulted in List 4A.

*Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to*

*Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43304 (Aug. 20,

2019).  Plaintiffs' claims accrued at the earliest on September 1, 2019, when USTR published

notice of List 4A in the Federal Register.  *Id.* Plaintiffs have therefore timely filed this action.

## RELEVANT LAW

17.     Section 301 of the Trade Act authorizes USTR to investigate a foreign country's

trade practices. 19 U.S.C. § 2411(b). If the investigation reveals an "unreasonable or

discriminatory" practice, USTR may take "appropriate" action, such as imposing tariffs on

imports from the country that administered the unfair practice. *Id.* § 2411(b), (c)(1)(B).

18.     Section 304 of the Trade Act requires USTR to determine what action to take, if

any, within 12 months after the initiation of the underlying investigation. *Id.* § 2414(a)(1)(B),

(2)(B).

19.     Section 307 of the Trade Act (in pertinent part) allows USTR to "modify or

terminate" an action taken pursuant to Section 301 of the Trade Act either when the "burden or

restriction on United States commerce" imposed by the investigated foreign country's practice

has "increased or decreased" or when the action "is no longer appropriate." *Id.* § 2417(a)(1)(B),

(C).

## HIGHLIGHTS OF THE PROCEDURAL HISTORY

### USTR's Investigation

20.     On August 14, 2017, President Trump directed Ambassador Lighthizer to

consider initiating an investigation pursuant to Section 301(b) of the Trade Act concerning

China's laws, policies, practices, and actions related to intellectual property, innovation, and

technology. *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual

Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017). According to the

President, certain Chinese "laws, policies, practices, and actions" on intellectual property,

innovation, and technology "may inhibit United States exports, deprive United States citizens of

fair remuneration for their innovations, divert American jobs to workers in China, contribute to

our trade deficit with China, and otherwise undermine American manufacturing, services, and

innovation." *Id.*

21.     Four days later, on August 18, 2017, USTR formally initiated an investigation

into "whether acts, policies, and practices of the Government of China related to technology

transfer, intellectual property, and innovation are actionable under [Section 301(b) of] the Trade

Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments:*

*China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and*

*Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

22.     Seven months later, on March 22, 2018, USTR released a report announcing the

results of its investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE,

*Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology*

*Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974*

(Mar. 22, 2018), available at https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF.

USTR found that certain "acts, policies, and practices of the Chinese government related to

technology transfer, intellectual property, and innovation are unreasonable or discriminatory and

burden or restrict U.S. commerce." *Id.* at 17. USTR based its findings on (1) China's use of

foreign ownership restrictions, foreign investment restrictions, and administrative licensing and

approval processes to pressure technology transfers from U.S. to Chinese companies, id. at 45;

(2) China's use of licensing processes to transfer technologies from U.S. to Chinese companies

on terms that favor Chinese recipients, id. at 48; (3) China's facilitation of systematic investment

in, and acquisition of, U.S. companies and assets by Chinese entities to obtain technologies and

intellectual property for purposes of large-scale technology transfer, id. at 147; and (4) China's cyber intrusions into U.S. computer networks to gain access to valuable business information, id. at 171. In its report, USTR did not quantify the burden or restriction imposed on U.S. commerce by the investigated practices.

23.    On the same date, USTR published a "Fact Sheet" stating that "[a]n interagency team of subject matter experts and economists estimates that China's policies result in harm to the U.S. economy of at least $50 billion per year." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Section 301 Fact Sheet* (Mar. 22, 2018), available at https://ustr.gov/aboutus/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet. USTR also indicated that, consistent with a directive from President Trump, it would "propose additional tariffs" of 25% ad valorem "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies." Id.; see *Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018) (President Trump's directive).

**Lists 1 and 2**

24.    Between April and August 2018 (i.e., within the 12-month statutory deadline from the initiation of the investigation in August 2017, see 19 U.S.C. § 2414(a)(2)(B)), Defendants undertook a series of actions to remedy the estimated harm to the U.S. economy caused by the investigated unfair practices, ultimately imposing duties on imports from China covered by Lists 1 and 2.

25.    On April 6, 2018, USTR published notice of its intent to impose "an additional duty of 25 percent on a list of products of Chinese origin." *Notice of Determination and Request*

*for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301:*

*China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and*

*Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018). The products on the proposed list

covered 1,333 tariff subheadings with a total value of "approximately $50 billion in terms of

estimated annual trade value for calendar year 2018." Id. at 14,907. USTR explained that it chose

$50 billion because that amount was "commensurate with an economic analysis of the harm

caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by

USTR's Section 301 investigation." OFFICE OF THE UNITED STATES TRADE

REPRESENTATIVE, *Under Section 301 Action, USTR Releases Proposed Tariff List on*

*Chinese Products* (Apr. 3, 2018), available at https://ustr.gov/about-us/policy-offices/press-

office/press-releases/2018/april/under-section-301- action-ustr.

26.    On June 20, 2018, USTR published notice of its final list of products subject to an

additional duty of 25% ad valorem, a list commonly known as "List 1." *Notice of Action and*

*Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section*

*301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual*

*Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018). USTR explained that it had

"narrow[ed] the proposed list in the April 6, 2018 notice to 818 tariff subheadings, with an

approximate annual trade value of $34 billion." *Id*. at 28,711.

27.    At the same time that it finalized List 1, USTR announced that it intended to

impose a 25% ad valorem duty on a second proposed list of Chinese products in order to

"maintain the effectiveness of [the] $50 billion trade action" grounded in its Section 301

investigation. Id. at 28,712. USTR announced a proposed "List 2" covering 284 tariff

subheadings with "an approximate annual trade value of $16 billion." *Id*. at 28,711-12.

28.    On August 16, 2018, USTR published notice of the final list of products subject to

an additional duty of 25% ad valorem in List 2, comprising "279 tariff subheadings" whose

"annual trade value . . . remains approximately $16 billion." *Notice of Action Pursuant to Section*

*301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual*

*Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018).

**List 3**

29.    As soon as USTR announced the results of its investigation in March 2018,

Defendants vastly expanded the scope of the tariffs imposed under Section 301 of the Trade Act

to cover imports worth more than $500 billion—ten times the amount it had deemed

"commensurate" with the findings of USTR's original investigation. Defendants did so for

reasons totally unrelated to the unfair practices that USTR had investigated.

30.    Shortly after President Trump directed USTR in April 2018 to consider imposing

duties on $50 billion in Chinese products, China promptly threatened to impose retaliatory duties

on the same value of imports from the United States. In response, President Trump "instructed

the USTR to consider whether $100 billion of additional tariffs would be appropriate under

Section 301" due to "China's unfair retaliation." THE WHITE HOUSE, *Statement from Donald*

*J. Trump on Additional Proposed Section 301 Remedies* (Apr. 5, 2018), available at

https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-additional

-proposed-section-301-remedies/.

31.    When USTR finalized List 1 in mid-June 2018, President Trump warned China

that he would consider imposing additional tariffs on Chinese goods if China retaliated against

the United States.

32.     Following through on his warning, on June 18, 2018, President Trump formally directed USTR to consider whether the United States should impose additional duties on products from China with an estimated trade value of $200 billion even though USTR had not yet implemented List 1 and List 2. President Trump acknowledged that China's threatened retaliatory "tariffs on $50 billion worth of United States exports" motivated his decision. THE WHITE HOUSE, *Statement from the President Regarding Trade with China* (June 18, 2018), available at https://www.whitehouse.gov/briefings-statements/statement-president-regarding-trade-china-2/ ("This latest action by China clearly indicates its determination to keep the United States at a permanent and unfair disadvantage, which is reflected in our massive $376 billion trade imbalance in goods. This is unacceptable.").

33.     Acknowledging the purpose of the President's directive, USTR stated that it would design the newly proposed duties to address China's threatened retaliatory measures, rather than any of the harms identified in its Section 301 investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action* (June 18, 2018), available at https://ustr.gov/about-us/policy-offices/press-office/press- releases/2018/june/ustr-robert-lighthizer-statement-0 (explaining that, although Lists 1 and 2 "were proportionate and responsive to forced technology transfer and intellectual property theft by the Chinese" identified in the Section 301 investigation, the proposed duties for a third list of products were necessary to respond to the retaliatory and "unjustified tariffs" that China may impose to target "U.S. workers, farmers, ranchers, and businesses").

34.     Despite these warnings from Defendants, China retaliated by imposing 25% ad valorem tariffs on $50 billion in U.S. goods implemented in two stages of $34 billion and $16

billion on the same dates the United States began collecting its own 25% tariffs under List 1

(July 6, 2018) and List 2 (August 23, 2018).

35.     About a week after China imposed its first round of retaliatory duties, USTR

published notice of its proposal to "modify the action in this investigation by maintaining the

original $34 billion action and the proposed $16 billion action, and by taking a further,

supplemental action" in the form of "an additional 10 percent ad valorem duty on [a list of]

products [from] China with an annual trade value of approximately $200 billion." *Request for

Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts,

Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,

83 Fed. Reg. 33,608, 33,608 (July 17, 2018). USTR invoked Section 307(a)(1)(C) of the Trade

Act, pursuant to which USTR "may modify or terminate any action, subject to the specific

direction, if any, of the President with respect to such action, . . . if . . . such action is being taken

under [Section 301(b)] of this title and is no longer appropriate." *Id*. at 33,609 (citing 19 U.S.C. §

2417(a)(1)(c)). USTR initially set a deadline of August 17, 2018 for initial comments; August

20-23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments. *Id*. at 33,608.

36.     In its notice, USTR confirmed that it had relied on China's decision to impose

"retaliatory duties" as the primary basis for its proposed action. Id. at 33,609 (asserting as

justification "China's response to the $50 billion action announced in the investigation and its

refusal to change its acts, policies, and practices"). USTR explicitly tied the $200 billion in its

proposed action to the level of retaliatory duties imposed by China on U.S. imports, noting that

"action at this level is appropriate in light of the level of China's announced retaliatory action

($50 billion) and the level of Chinese goods imported into the United States ($505 billion in

2017)." *Id*.; *see also id*. (Because "China's retaliatory action covers a substantial percentage of

U.S. goods exported to China ($130 billion in 2017)," "the level of the U.S. supplemental action must cover a substantial percentage of Chinese imports."). Although it pointed to China's retaliatory measures, USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had investigated. *See id*.

37.     USTR's contemporaneous press statements corroborated the contents of its notice: China's retaliatory duties motivated its proposed action. Ambassador Lighthizer stated that the proposed action came "[a]s a result of China's retaliation and failure to change its practice." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018), *available at* https://ustr.gov/aboutus/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

38.     That same day, President Trump suggested that the United States' trade imbalance with China supported the decision. @realDonaldTrump, TWITTER (July 10, 2018, 9:17 PM EDT), https://twitter.com/realDonaldTrump/status/1005982266496094209. Over the following weeks, President Trump also expressed his frustration over China's purported manipulation of its currency and national monetary policy, as well as his continued displeasure over China's retaliatory tariffs and the trade imbalance between the two nations. See, e.g., @realDonaldTrump, Twitter (July 20, 2018, 8:43 AM EDT), https://twitter.com/realDonaldTrump/status/1020287981020729344; @realDonaldTrump, TWITTER (July 20, 2018, 8:51 AM EDT), https://twitter.com/realDonald Trump/status/1020290163933630464; @realDonaldTrump, TWITTER (July 25, 2018, 7:20 AM EDT), https://twitter.com/realDonaldTrump/status/1022079127799701504; @realDonaldTrump,

Twitter (July 25, 2018, 7:01 AM EDT), https://twitter.com/realDonaldTrump/status/1022074
252999225344.

39.     Within days of these statements, Ambassador Lighthizer announced that, in light
of China's retaliatory duties, USTR would propose to increase the additional duty from 10% to
25% ad valorem. Rather than addressing the practices that USTR investigated pursuant to
Section 301 of the Trade Act, he stated that China "[r]egrettably . . . has illegally retaliated
against U.S. workers, farmers, ranchers and businesses." OFFICE OF THE UNITED STATES
TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on
Section 301 Action* (Aug. 1, 2018), available at https://ustr.gov/about-us/policy-offices/press-
office/press-releases/2018/august/state ment-us-trade-representative.

40.     Shortly thereafter, USTR, at the direction of President Trump, formally proposed
"raising the level of the additional duty in the proposed supplemental action from 10 percent to
25 percent." *Extension of Public Comment Period Concerning Proposed Modification of Action
Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer,
Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018). USTR also
set new dates for a public hearing over six days ending on August 27, 2018. *See id.; see also*
OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Public Hearings on
Proposed Section 301 Tariff  List* (Aug. 17, 2018) (modifying hearing schedule), *available at*
https://ustr.gov/about-us/policyoffices/press-office/press-releases/2018/august/public-hearings-
proposed-section-301.

41.     At the same time, USTR adjusted the deadlines for the submission of written
comments, setting September 6, 2018—less than a month later—as the new deadline for both
initial and rebuttal comments from the public. 83 Fed. Reg. at 38,761. That adjustment, deviating

from its past practices, prevented both USTR and the public from considering initial comments at the hearing, and left insufficient time for interested parties to review and respond to the initial comments filed by other parties. USTR also limited each hearing participant to five minutes. Docket No. USTR-2018-0026, https://beta.regulations.gov/document/USTR-2018-0026-0001. Despite those obstacles, approximately 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments. *Id*.

    42.    Just eleven days after receiving final comments from the public, President Trump announced that he had directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China." THE WHITE HOUSE, Statement from the President (Sep. 17, 2018). Once again, the President made clear that China's response to the $50 billion tariff action (i.e., List 1 and List 2 duties) motived his decision, and he immediately promised to proceed with "phase three" of the plan—an additional $267 billion tariff action—"if China takes retaliatory action against our farmers or other industries." *Id.*

    43.    Following the President's announcement, USTR published notice of the final list of products subject to an additional duty, a list commonly known as "List 3." 83 Fed. Reg. at 47,974. USTR imposed a 10% ad valorem tariff that was set to rise automatically to 25% on January 1, 2019. Id. USTR determined that the List 3 duties would apply to all listed products that enter the United States from China on or after September 24, 2018. Id. USTR did not respond to any of the over 6,000 comments that it received or any of the testimony provided by roughly 350 witnesses. *Id*.

    44.    As legal support for its action, USTR for the first time cited Section 307(a)(1)(B) of the Trade Act, which provides that USTR "may modify or terminate any action, subject to the specific direction . . . of the President . . . taken under Section 301 if . . . the burden or restriction

on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased." Id. (brackets omitted). USTR stated that the relevant burden "continues to increase, including following the one-year investigation period," adding that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies." *Id*. USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China." *Id*. at 47,975.

45.     In the following months, China and the United States tried to resolve their escalating trade war through trade negotiations.  Based on the progress made with China in those negotiations, the Trump Administration announced in December 2018, and again in February 2019, that it would delay the scheduled increase in the List 3 duty rate from 10 to 25%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966 (Mar. 5, 2019).

46.     Apparently, these trade negotiations were not successful.  In May 2019, USTR announced its intent to raise the tariff rate on List 3 goods to 25%, effective either May 10, 2019 or June 1, 2019, depending on the day of export. *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) ("List 3 Rate Increase Notice");

*see also Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices*

*Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892

(May 15, 2019). The notice cited China's decision to "retreat from specific commitments agreed

to in earlier rounds" of negotiations as the basis for the increase in the duty rate. List 3 Rate

Increase Notice, 84 Fed. Reg. at 20,459. Unlike with past imposition of new tariffs, USTR did

not seek public comment but rather simply announced that the increase would occur. *Id.*

47.     Recognizing that List 3 would cause substantial harm to U.S. companies and

consumers, as well as the U.S. economy, USTR in June 2019 invited the public to seek

exclusions from List 3 duties on a product-specific basis. *Procedures for Requests to Exclude*

*Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts,*

*Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,

84 Fed. Reg. 29,576 (June 24, 2019).   *Notice of Product Exclusions: China's Acts, Policies, and*

*Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg.

61,674, 61,675 (Nov. 13, 2019). Plaintiffs received certain exclusions.  Those exclusions were

extended until December 31, 2020. *Notice of Product Exclusion Extensions: China's Acts,*

*Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,*

85 Fed. 48600 (Aug. 11, 2020).

48.     The duties imposed on products covered by Lists 3 remain in effect as of the date

of this Complaint, with the exception of the limited number of products for which USTR

extended its originally granted exclusions from the List 3 duties. See, e.g., *Notice of Product*

*Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer,*

*Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600 (Aug. 11, 2020).

**List 4**

49.     On May 17, 2019, a mere eight days after it published notice of its decision to increase the duty rate on imports covered by List 3, USTR announced its intent to proceed with yet another list—List 4—covering even more products subject to additional duties. Under USTR's proposal, List 4 would impose an additional duty of 25% ad valorem on products worth $300 billion. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 22,564, 22,564 (May 17, 2019). USTR explained that its decision was motivated by China's retreat from specific commitments and its retaliation against U.S. commerce. *Id.*

50.     Similar to the process it followed for List 3, USTR invited the public to comment on proposed List 4 and participate in a hearing. Id. The public submitted nearly 3,000 comments. Docket No. USTR-2019-0004, https://beta.regulations.gov/document/USTR-2019-0004-0001. Despite the opportunity to comment, the timeline for participation in the hearing left little room for meaningful input: USTR required witnesses to submit drafts of their testimony by June 10, 2019, some seven days before the deadline for fully developed written comments, and then it again limited witnesses to five minutes of testimony at the hearing. Id.

51.     On August 1, 2019, citing China's failure to follow through on agricultural purchases and to reduce exports of fentanyl flowing into the United States, President Trump announced that the List 4 tariffs would become effective September 1, 2019 at a rate of 10% ad valorem. @realDonaldTrump, TWITTER (Aug. 1, 2019, 1:26 PM EDT), https://twitter.com/real DonaldTrump/status/1156979446877962243.

52.     On August 20, 2019, USTR issued a final notice adopting List 4 in two tranches. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to*

*Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019). List 4A would impose a 10% ad valorem duty on goods worth roughly $120 billion, effective September 1, 2019. *Id.* at 43,304. List 4B would impose a 10% ad valorem duty on the remaining goods (with limited exclusions "based on health, safety, national security, and other factors"), effective December 15, 2019. Id. at 43,305. Once again, USTR did not address any of the nearly 3,000 comments submitted or any of the testimony provided by witnesses, other than to claim that its determination "takes account of the public comments and the testimony." *Id.*

53.     As legal support for its action, USTR again cited Section 307(a)(1)(B) and (C) of the Trade Act, stating that it may modify its prior action taken pursuant to Section 301 of the Trade Act if (1) "[t]he burden or restriction on United States commerce" imposed by the investigated foreign country practice "has increased or decreased," or (2) "the action . . . is no longer appropriate." Id. at 43,304. But instead of finding any increased burden on U.S. commerce from the practices that were the subject of USTR's investigation, USTR simply pointed to "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices as determined in that investigation," including retaliatory tariffs on U.S. imports, retreating from commitments during negotiations, and devaluing its currency. *Id.*

54.     Ten days later, USTR published notice of its decision to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10% to 15%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019). USTR explained that it increased the tariff rate because, shortly after it finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods." Id. at 45,822. USTR once again cited to

China's retreat from its negotiation commitments and devaluation of its currency as grounds for its action. *Id.*

55.     On December 18, 2019, as a result of successfully negotiating a limited trade deal with China, USTR published notice that it would "suspend indefinitely the imposition of additional duties of 15 percent on products of China covered by" List 4B. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 69,447, 69,447 (Dec. 18, 2019). USTR also stated its intent to reduce the tariff rate applicable to products covered by List 4A, id., an action that ultimately became effective on February 14, 2020, when USTR reduced by half the applicable duty rate, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020).

56.     In the months that followed, the United States and China implemented the limited trade deal that they negotiated near the end of 2019. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *United States and China Reach Phase One Trade Agreement* (Dec. 13, 2019), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2019/december/united-statesand-china-reach. During that time, Defendants declined to impose additional duties on imports covered by List 4B.

57.     The duties imposed on products covered by List 4A remain in effect as of the date of this Complaint. Although the proposed duties on products covered by List 4B remain suspended, President Trump has continued to threaten to impose them if China does not meet its obligations under their limited trade deal. See, e.g., @realDonaldTrump, TWITTER (June 22, 2020, 10:22 PM EDT), https://twitter.com/realDonaldTrump/status/1275252814206447618

("The China Trade Deal is fully intact. Hopefully they will continue to live up to the terms of the Agreement!").

## STATEMENT OF CLAIMS

## COUNT ONE

## (DECLARATORY JUDGMENT—VIOLATION OF THE TRADE ACT OF 1974)

58.     Paragraphs 1 through 57 are incorporated by reference.

59.     The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

60.     The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the List 3 or List 4 tariffs.

61.     Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. § 2411(b). USTR failed to predicate its action giving rise to List 3 or List 4 on any such determination.

62.     If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." 19 U.S.C. § 2414(a)(1)(B), (2)(B). USTR's action giving rise to List 3 occurred in September 2018, over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017.

63.     If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to

take within "12 months after the date on which the investigation is initiated." 19 U.S.C. § 2414(a)(1)(B), (2)(B). USTR's action giving rise to List 4 occurred in September 2019, well over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017.

64.   Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases. 19 U.S.C. § 2417(a)(1)(B). Section 307 of the Trade Act, however, does not permit Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act. Congress did not authorize USTR to escalate its focused investigatory findings into additional tariffs unrelated to the underlying investigation.

65.   Section 307 of the Trade Act also authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by USTR "is no longer appropriate." 19 U.S.C. § 2417(a)(1)(C). Section 307 of the Trade Act does not authorize Defendants to increase tariff actions that are no longer "appropriate," but rather only to delay, taper, or terminate such actions.

66.   Plaintiffs are therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 3 are ultra vires and contrary to law.

67.   Plaintiffs are therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 4A are ultra vires and contrary to law.

## COUNT TWO

## (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

68.   Paragraphs 1 through 57 are incorporated by reference.

69.    The APA authorizes the Court to hold unlawful and set aside agency action that

is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B)

contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory

jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of

procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

70.    Defendants exceeded their authority under the Trade Act in promulgating List 3

and therefore acted "not in accordance with the law" and "in excess of statutory authority" for

the reasons set forth in Count One.

71.    Defendants exceeded their authority under the Trade Act in promulgating List 4A

and therefore acted "not in accordance with the law" and "in excess of statutory authority" for

the reasons set forth in Count One.

72.    Defendants failed to offer any evidence for any asserted "increased burden" from

China's intellectual property policies and practices that were the subject of USTR's Section 301

investigation.

73.    Defendants also promulgated List 3 in an arbitrary and capricious manner because

they did not provide a sufficient opportunity for comment, failed to meaningfully consider

relevant factors when making their decisions, and failed to adequately explain their rationale.

Defendants' preordained decision-making resulted in the unlawful imposition of tariffs on

imports covered by List 3.

74.    Defendants also promulgated List 4A in an arbitrary and capricious manner

because they did not provide a sufficient opportunity for comment, failed to meaningfully

consider relevant factors when making their decisions, and failed to adequately explain their

rationale. Defendants' preordained decision-making resulted in the unlawful imposition of tariffs on imports covered by List 4A.

***

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court

(1) declare that Defendants' actions resulting in tariffs on products covered by List 3 are unauthorized by, and contrary to, the Trade Act;

(2) declare that Defendants arbitrarily and unlawfully promulgated List 3 in violation of the APA;

(3) vacate the List 3 rulemaking;

(4) order Defendants to refund, with interest, any duties paid by Plaintiffs pursuant to List 3;

(5) permanently enjoin Defendants from applying List 3 against Plaintiffs and collecting any duties from Plaintiffs pursuant to List 3;

(6) declare that Defendants actions resulting in tariff on products covered by List 4A are unauthorized by, and contrary to, the Trade Act;

(7) declare that Defendants arbitrarily and unlawfully promulgated List 4A in violation of the APA;

(8) vacate the List 4A rulemaking;

(9) order Defendants to refund, with interest, any duties paid by Plaintiffs pursuant to List 4A;

(10) permanently enjoin Defendants from applying List 4A against Plaintiffs and collecting any duties from Plaintiffs pursuant to List 4A;

(11) award Plaintiffs their costs and reasonable attorney fees; and

(12) grant such other and further relief as may be just and proper.

Respectfully submitted,

/s/ Evelyn M. Suarez
The Suarez Firm PLLC
5523 Sherier Pl, NW
Washington, D. C. 20017
202-552-0310
esuarez@suarezfirm.com

September 17, 2020

## **CERTIFICATE OF SERVICE**

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on

September 17, 2020, copies of Plaintiffs' Summons and Complaint were served on the following

parties by certified mail, return receipt requested:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

General Counsel Joseph L. Barloon
Office of the General Counsel
Office of the U.S. Trade Representative
600 17th Street, NW
Washington, DC 20006

Chief Counsel Scott K. Falk
Office of Chief Counsel
U.S. Customs & Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229

/s/ Evelyn M. Suarez
THE SUAREZ FIRM PLLC
5523 Sherier Pl., NW
Washington, D.C. 20017
202-552-0310
esuarez@suarezfirm.com